60410. KNIGHT INDUSTRIES, INC. v. TURNER MARKETING, INC. et al.

POPE, Judge.

Knight Industries, Inc. (Knight) brought suit against Turner Marketing, Inc. (Turner) and its principal officer, William H. Sanders, for breach of an exclusive marketing contract. The complaint alleged that Turner had damaged Knight in the amount of $93,000 by refusing to purchase 60,000 Design-A-Wall units for which it was obligated under the contract. This appeal is from the grant of Turner's motion for summary judgment. We affirm.

The trial court found that Knight (or its predecessor) and Turner entered into an agreement, comprised of two documents to be jointly construed, under which Knight was to supply a certain product known as "Design-A-Wall" to Turner at a stipulated price from August 1, 1974 to January 31, 1976. It was provided that unless either party exercised its right of cancellation on or before the expiration date of the original term, the agreement would be automatically extended for a year. Either party could terminate the agreement at any time if the other "ceases to conduct operations in the normal course of business, including inability to meet obligations as they mature, . . . threatens to breach or breaches or repudiates" any

of the contractual obligations. Turner was obligated to purchase and sell for test marketing a minimum of 1,000 units in the initial term and, absent termination, an additional 60,000 units during the renewal period. Turner was vested with "complete and absolute discretion . . . including time, place and manner" as to marketing techniques to be used. In late Fall of 1974 it became apparent to Turner that Knight was unable to pay its suppliers, and the last units of Design-A-Wall were produced in January of 1975. Prior to expiration of the initial term, Turner recognized that its extensive marketing efforts had failed to yield "significant interest on the part of the retailer or notable demand on the part of the public" for the 7,000 units it had purchased. On several occasions Turner communicated its intentions not to continue the agreement or to purchase additional units from Knight and on April 29, 1976, written notice of termination was given. Turner finally disposed of its remaining 3,900 units by way of barter arrangements.

Based upon construction of the agreement as a whole and other evidence of record, the trial court concluded as a matter of law that the agreement was validly terminated prior to the expiration of the first term; but that even if the agreement was not terminated during the first term and was automatically renewed for an additional year, it was terminated without imposing an obligation on Turner to purchase the extra 60,000 units because Knight had failed to remedy its defaults and inability to perform under the agreement, which was a sufficient ground for termination either prior to or after the expiration of the first term. The court also ruled that contrary to Knight's argument that Turner failed to use its "best efforts," Turner showed that it had exercised sufficient efforts under any reasonable construction of the agreement to market and promote the product, and there was thus no failure of performance by Turner as a matter of law; and that in any event, since the parties expressly agreed to vest absolute discretion in Turner to choose a method of performance of marketing, the court was precluded as a matter of law from any subjective evaluation of those efforts. The court also determined that there was no liability arising from these circumstances attributable to Turner's officer, Sanders, since he was acting in his capacity and with proper authority on behalf of Turner in dealing with Knight, and therefore would not be individually liable even if Turner had breached the agreement.

The record is replete with evidence to support the trial judge's findings of fact, and his conclusions of law are applicable and correct. The terms of the parties' contract are unambiguous and Turner was given an absolute discretion as to marketing techniques. "There can be no breach . . . where a party to a contract has done what the

provisions of the contract expressly give him the right to do." *Automatic Sprinkler Corp. v. Anderson,* 243 Ga. 867, 868 (257 SE2d 283) (1979). Turner's marketing activities far surpassed the standard of good faith which Knight contends was breached.

It follows that Knight's argument that its default was caused by Turner's own failure of performance is likewise without merit. " 'It is generally held that no liability for procuring a breach of contract exists where the breach is caused by the exercise of an absolute right — that is, an act which a man has a definite legal right to do without any qualification.' " *Campbell v. Carroll,* 121 Ga. App. 497, 499 (174 SE2d 375) (1970), aff'd. 226 Ga. 700 (177 SE2d 83) (1970). Accord, *Lowe v. R. C. Cola Co.,* 132 Ga. App. 37, 42 (3) (207 SE2d 620) (1974). In an even stronger posture, no liability can accrue to Sanders, a corporate officer with a definite legal right to act on behalf of Turner, which had the express contractual authority to terminate the agreement upon Knight's inability to perform.

Since "the evidence introduced by appellees has pierced the pleadings and discloses the absence of a right of recovery," summary judgment was properly granted. *Grace v. Roan,* 145 Ga. App. 776, 778 (245 SE2d 17) (1978); *Hudson v. Venture Industries,* 147 Ga. App. 31 (2) (248 SE2d 9) (1978), aff'd. 243 Ga. 116 (252 SE2d 606) (1979).

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED JANUARY 20, 1981.

*Jeffrey B. Bogart, Joel Y. Moss,* for appellant.
*J. Kirk Quillian, Herbert D. Shellhouse,* for appellees.