[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
September 23, 2004
**THOMAS  K. KAHN**
**CLERK**

No. 04-12025
Non-Argument Calendar

_____

D. C. Docket No. 02-00125-CV-WTM-2

TERRY GILMOUR,

Plaintiff-Appellant,

versus

AMERICAN NATIONAL RED CROSS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(September 23, 2004)**

Before CARNES, HULL and GODBOLD, Circuit Judges.

PER CURIAM:

This case overlaps factually with Gilmour v. Gates, McDonald & Co., __ F.3d __ (11th Cir. 2004), which was dismissed on a summary judgment order for Gates and affirmed by this court. The central issue in this case is the reasonableness of Terry Gilmour's actions in response to oral and written assertions by the American National Red Cross to pay her medical expenses. The district court determined her actions were unreasonable as a matter of law. We agree.

Following the tragic events of September 11, 2001 in New York City, Gilmour traveled from Georgia to New York City to volunteer for Red Cross and assist with the disaster relief effort. Shortly after her arrival, Gilmour contracted Legionnaire's Disease and as a result endured a series of medical complications that ultimately ended her tenure with Red Cross. At the time of her illness Gilmour had served as a volunteer for well over a year, working for nearly three months as a paid employee.

To protect its staff against such unforeseen events Red Cross made available $10,000 worth of supplemental insurance coverage as well as a procedure to apply to the national headquarters for additional insurance coverage. Red Cross manuals provide that this additional coverage is available at the discretion of the director of the relief operation for workers with insufficient resources for immediate care.

2

Longer term care requires approval through national headquarters. These manuals require volunteers to maintain and utilize their own health insurance.

Gilmour's health insurance coverage was set to expire on the day of her admission to the hospital in New Jersey. She announced this fact to her supervisor, Rita Brookshire, and offered to forgo having a phone in her room. Brookshire told Gilmour, "Red Cross will end up paying anything your insurance doesn't pay." After her admission Red Cross arranged for Gilmour's father, Jim Wynn, to travel to New Jersey to comfort his daughter. Wynn was also concerned about the medical expenses and was told by Red Cross representatives that Red Cross "would take care of all her expenses, that they had a $10,000 policy, but would take care of all her expenses." Red Cross also assisted Gilmour in extending her health insurance through a post-employment insurance plan mandated by federal law after her regular insurance coverage lapsed. As a result all of Gilmour's covered medical expenses were paid under her own insurance policy through February 2002.

Gilmour eventually was transferred to a hospital in Georgia where she underwent rehabilitation and therapy. After her release she continued to volunteer for Red Cross near her home. Meanwhile Brookshire continued to seek assistance from Red Cross on Gilmour's behalf. With Brookshire's support, in January 2002

Gilmour drafted a letter to Red Cross requesting additional aid and notifying Red Cross of her escalating medical costs as well as her desire to cancel her own insurance policy. Gilmour also overheard Brookshire explain to a Red Cross representative that she "did not need further assistance with medical bills because Red Cross had already agreed to pay for these." Shortly after submitting this letter, Brookshire advised Gilmour that the "board" had met and determined that she was eligible for additional assistance, "but they did not know the amount."

In March 2002 Gilmour's post-employment federally mandated insurance policy lapsed because she could not afford the monthly premium and understood that Red Cross would pay her medical expenses. In July after Red Cross failed to cover her medical costs she filed suit alleging (1) breach of contract, (2) negligent misrepresentation, (3) promissory estoppel, and (4) attorney's fees. Afterwards Red Cross tendered $10,000 pursuant to its supplemental insurance policy.

After discovery commenced, Red Cross moved for summary judgment which was granted on all counts. The contract claim failed for lack of consideration. The claim of negligent misrepresentation failed because speakers who made the statements lacked a pecuniary interest in whether Gilmour's insurance was supplemented by Red Cross and because Gilmour's reliance on statements made to her was unreasonable. The promissory estoppel claim failed

4

because Gilmour's reliance on the written Red Cross manuals and the oral statements was unreasonable as a matter of law and the written statements lacked mutuality. Gilmour was not entitled to attorney's fees because she had no underlying claim. Gilmour appealed the ruling on the negligent misrepresentation, promissory estoppel, and attorney's fees issues. We affirm.

We review *de novo* a district court's order granting motion for summary judgment and construe "all reasonable doubts about the facts in favor of the non-movant." Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990).

Under Georgia law the doctrine of promissory estoppel allows a party who has reasonably relied on the promise of another to bring an action to enforce the promise so long as the reliance was reasonably expected. See O.C.G.A. § 13-3-44(a). The question of whether a party reasonably relied on the promise of another is ordinarily a factual inquiry for a jury to resolve. See Ambrose v. Sheppard, 241 Ga. App. 835, 837 (2000). However a determination of reasonableness can be made as a matter of law if a prior disclaimer or disclosure prevents justifiable reliance on the representation. See W.R. Grace & Co.- Conn. v. Taco Tico Acquisition Corp., 216 Ga. App. 423, 426 (1995).

Taken together the oral and written statements preclude a finding of reasonable reliance as a matter of law. The written statements in the Red Cross

5

manuals never promised to do anything more than Red Cross did. The manuals

state that funds were available to compensate volunteers who were injured in

connection with their volunteer work. These funds were available and $10,000

was paid to Gilmour to aid in paying her medical expenses. The fact that

additional funding for long term care was available through national headquarters

with approval of Red Cross is inconsequential. Before her trip to New Jersey Red

Cross never promised to provide Gilmour with any additional funding. After she

became ill Red Cross followed the procedure set forth in the manuals and Gilmour

was denied additional insurance coverage. Because these statements did not

promise to do anything over and above what was done we need not decide whether

these statements lacked mutuality.

Against this background, Gilmour's reliance on any additional medical

coverage based on the oral statements is unreasonable as a matter of law. When

the oral statements were made to Gilmour she knew through her tenure with Red

Cross that the only coverage provided was set forth in clear written terms in the

Red Cross manuals she received and reviewed. Thus when Brookshire and other

representatives made oral representations that she would be taken care of these

representations must be viewed in context of the written statements contained in

the Red Cross manuals. <u>See</u>, <u>e.g.</u>, <u>Gerdes v. Russell Rowe Communications, Inc.</u>,

6

232 Ga. App. 534, 536 (1998) (plaintiff could not reasonably rely on oral promise for higher compensation when earlier binding agreement specifically stated alterations must be in writing). Moreover the Red Cross manuals (and many of the oral statements themselves) clearly referenced the $10,000 supplemental policy limit and procedure for obtaining additional coverage. The Red Cross manuals also made clear that employees were to have their own insurance coverage. When Brookshire advised Gilmour that the "board" had met and determined Gilmour was eligible for assistance but did not specify an amount, Gilmour had no reason to believe any amount over the $10,000 was forthcoming. Gilmour mistakes Brookshire's general concern for her well-being for a promise that she could justifiably rely upon. Both Brookshire and Gilmour knew the context in which these representations were made.

Viewed in this light, Gilmour's reliance on the oral statements was unreasonable as a matter of law. Without notice of the insurance framework set forth in the Red Cross manuals, the facts of this case would vaguely resemble those in Folks, Inc. v. Dobbs, 181 Ga. App. 311(1987). In Dobbs the court held that the reasonableness of a restaurant patron's reliance on the owner's statement that he would pay her expenses after she slipped and fell was a question for the jury. See id. at 314. Considering these written statements however the result in this case is

7

governed by our decision in <u>Doll v. Grand Union Co.</u>, 925 F.2d 1363, 1373 (11th Cir. 1991) where we held that a development partnership's reliance on a supermarket chain's intention to lease shopping space was unreasonable in the context of documents that stated the chain was not bound until the final draft of a lease was executed. Moreover unlike the patron in <u>Doll</u> who had no preexisting relationship with the restaurant owner or notice of any reimbursement procedure Gilmour had served Red Cross for over a year and was familiar with its policies and procedures for injured volunteers.

<u>DPLM, Ltd v. J.H. Harvey Co.</u>, 241 Ga. App. 219 (1999) confirms this distinction. In <u>DPLM</u> the Court held that unlike <u>Doll</u> the parties did not make the requirement of a final agreement explicit before engaging in negotiations to expand a tenant's store – there was no preexisting agreement which made the parties reliance unreasonable. <u>See</u> <u>id</u>. at 223-24. Consequently under Georgia law the written statements notifying Gilmour of the $10,000 supplemental insurance coverage and the additional coverage available at the discretion of the national headquarters of Red Cross mandate our finding that Gilmour's reliance on oral promises of additional insurance coverage was unreasonable as a matter of law.

Moreover Gilmour's claim of additional medical reimbursement over the $10,000 potentially exposes Red Cross to potentially unlimited reimbursement

8

costs. Given this exposure it is questionable whether the statements were sufficiently definite for Gilmour to rely upon as required by Georgia law. See, e.g., Mooney v. Mooney, 245 Ga. App. 780, 783-84 (2000) (estranged husband's promise to "help [wife]" too vague); DeLong Equip. Co. v. Washington Mills Abrasive Co., 887 F.2d 1499, 1518 (11th Cir. 1989) (indefinite oral distributorship agreement cannot support promissory estoppel claim). For instance Brookshire's response that Red Cross would cover expenses that Gilmour's insurance does not pay was in response to her query concerning a telephone in her room. This statement could be construed to refer only to cover additional expenses for the phone in the room. Gilmour concedes this indefiniteness in her letter to Red Cross inquiring into the status of the national board's decision to extend additional coverage. This issue was not decided by the district court and we need not decide it here. What is clear to us however is that Gilmour's reliance on the oral representations made by Red Cross personnel was unreasonable as a matter of law.

Gilmour's claim for negligent misrepresentation is fatally flawed. The Georgia standard for a negligent misrepresentation claim tracks the Restatement (Second) of Torts § 552 (1977) and provides:

> [O]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is

9

subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. <u>Robert & Co. Assocs. v. Rhodes-Haverty P'ship.</u>, 250 Ga. 680, 681 n.1 (1983) (citing Restatement (Second) of Torts, § 552 (1977)) (emphasis added).

Gilmour urges an awkward construction of the Restatement that excises pecuniary interest from the beginning of the sentence so that the statement may be made during the course of business, profession, or employment <u>or</u> a transaction with a pecuniary interest. This reading is supported by neither logic nor the Restatement itself. To state a claim for negligent misrepresentation under Georgia law the speaker must have a pecuniary interest. <u>See</u> Restatement (Second) of Torts, § 552 cmt. c (1977). This reading avoids imposing liability on a speaker who provides gratuitous information when the speaker is not obligated to speak. <u>See</u> <u>id</u>.

Brookshire and other Red Cross personnel had no pecuniary interest in whether Gilmour received supplemental insurance coverage from Red Cross. They were merely attempting to care for a fallen colleague. Moreover, even assuming Brookshire and other Red Cross personnel who made statements to Gilmour had a pecuniary interest in Gilmour's reimbursement, our finding of Gilmour's reliance as unreasonable as a matter of law forecloses a claim based on negligent misrepresentation. <u>See</u> <u>Robert & Co. Assoc.</u> at 681 n.1. Accordingly Gilmour has

10

no claim for negligent misrepresentation.

Finally we agree with the district court that Gilmour has no claim for attorney's fees. We decided in <u>Gilmour v. Gates, McDonald & Co.</u>, __ F.3d __ (11th Cir. 2004) that a claim for an attorney's fees under the Georgia statute invoked by Gilmour, O.C.G.A. Section 13-6-11, requires an underlying claim. As in that case Gilmour has no underlying claim to support an attorney's fee award here.

AFFIRMED.