A06A1073. MITCHELL v. GEORGIA DEPARTMENT OF COMMUNITY HEALTH et al.

(635 SE2d 798)

JOHNSON, Presiding Judge.

This appeal arises out of a dispute over the denial of in-network medical benefits to Kimberly Mitchell for two surgeries she elected to undergo at the University of Alabama-Birmingham Hospital ("UAB") in 2002 and 2003. As a state employee, Mitchell is eligible to participate in the state health benefit plan ("SHBP"), operated by the Georgia Department of Community Health ("DCH"). SHBP members' health benefits vary based on the coverage plan chosen by the member and whether the member receives treatment from an in-network versus an out-of-network provider and/or facility. DCH contracts with Blue Cross and Blue Shield of Georgia, Inc. ("BCBS") to administer all claims for the Indemnity and PPO plans of the SHBP. BCBS is responsible for handling customer service requests from SHBP members and is responsible for determining the usual, customary and reasonable ("UCR") fees for physician providers.

DCH also contracts with Beech Street Corporation ("Beech Street"), a national managed health care company that is responsible for the development, administration and maintenance of a national PPO network of providers for the benefit of SHBP members. Beech Street allows clients to customize their individual contracts, making certain providers within the national PPO network ineligible under the client's offered health care plan, thereby reducing costs for plan members. Therefore, the Beech Street website contains the names of

providers who are part of the Beech Street PPO network, but are not part of the SHBP/Beech Street PPO network.

The DCH website directs SHBP members to consult its website to determine whether a particular facility is a participating provider in the SHBP/Beech Street PPO network. The DCH website also incorporates multiple disclaimers stating that certain Beech Street hospitals and providers are not participating providers for purposes of the SHBP PPO plan. These disclaimers prominently appear in red ink alongside the link to Beech Street's website. In addition, once a member links to the Beech Street website, there are also disclaimers warning members to confirm the network status of providers with their individual health benefit plan. Disclaimers are both imbedded in the web page and appear as pop-ups when an individual attempts to search for a provider or facility.[1] In the present case, although UAB was a part of Beech Street's national PPO network, UAB was excluded as an "in-network" provider available to SHBP PPO members. Beech Street has no involvement with the administration of benefits under the SHBP or in the determination of UCR charges.

On March 18, 2002, Mitchell underwent surgery on her left hip and was admitted to a UAB hospital through March 22, 2002. During this admission, Mitchell was on the Indemnity option of the SHBP. This option provides that a member can go to any provider she chooses, subject to the possibility of balance billing or payment of fees that exceeded the amount allowed under the plan if she sought treatment from a nonparticipating provider or facility. If a member chose to go to an in-network provider, the SHBP paid 90 percent of the costs up to the UCR fees for physician services or 90 percent of the diagnostic related grouping ("DRG") rates for hospital charges. However, as admitted by Mitchell,[2] UAB was an out-of-network provider. Therefore, Mitchell was reimbursed at a nonparticipating rate because she voluntarily chose to receive treatment outside of Georgia. Had Mitchell visited an in-state/in-network hospital, she would not have been balance billed because the contract between DCH and in-state Georgia hospitals required those hospitals to accept predetermined rates of reimbursement, pursuant to the DRG, and to write off any amounts exceeding the DRG amount. Mitchell admitted that although DCH had introduced a PPO plan in July 2001, she

---

[1] Both disclaimers clearly stated: "The provider you select may not be available to all Beech Street customers due to individual benefit plan or network restrictions. Please verify your benefits by calling your Health Plan Benefit Administrator or Insurance Company."

[2] Mitchell testified that she knew that UAB and its providers were outside of her network, but she believed the care she received at UAB could not be matched at an in-network hospital. She noted that she was responsible for any expenses above what the insurance company determined usual, customary and reasonable.

elected to continue her care under the Indemnity plan, rather than switch to the PPO option, because she wanted to continue care with UAB, and the Indemnity option allowed her to go out-of-network.

In July 2002, Mitchell chose to change from the Indemnity plan to the PPO plan. Prior to choosing the PPO plan, Mitchell was advised of the implications of seeking medical care from an out-of-network provider. Like the Indemnity plan, the PPO plan distinguishes between in-state and out-of-state providers and between in-state and out-of-state coverage. SHBP PPO members treated outside of Georgia were reimbursed at an 80 percent out-of-state/in-network rate and a 60 percent out-of-state/out-of-network rate, after the relevant deductibles had been satisfied. Approximately one year later, on March 17, 2003, Mitchell underwent surgery on her right hip at UAB. Since UAB had been excluded from the SHBP PPO network, Mitchell's 2003 surgery at UAB was reimbursed at the 60 percent rate after relevant deductibles were satisfied. Mitchell claims she entered Beech Street's website directly, without first visiting DCH's website as directed, and that she did not see any disclaimers on the Beech Street website indicating that UAB was an out-of-network provider for DCH members.

However, DCH confirmed UAB's status as an out-of-network provider in a pre-certification letter to Mitchell, dated March 5, 2003, which specifically stated:

> Additionally, the health care provider and/or facility/vendor listed above are not in-network. **Please be aware that the receipt of non-emergency care from a non-network provider and/or facility/vendor will result in reduced benefits and/or higher out-of-pocket expenses. The use of out-of-state providers, even when they are in-network, will also result in reduced benefits.**

(Emphasis in original.) Despite receiving this letter, Mitchell nonetheless chose to have her surgery performed at UAB.

DCH, Beech Street and BCBS denied certain health insurance benefits to Mitchell related to her 2003 hospitalization. They claimed that the DRG and UCR rates were reasonable, and they alleged UAB was out-of-network, which subjected Mitchell to balance billing for the amount in excess of the DRG and UCR fees. As a result, Mitchell incurred expenses in excess of $50,000. She brought suit to recoup these expenses.

Mitchell moved for partial summary judgment as to the claims regarding her 2003 hospitalization on the basis that UAB was listed as a participating provider in the national PPO network and DCH admitted Mitchell's benefits should have been paid as in-network.

DCH, Beech Street and BCBS moved for summary judgment on all claims, arguing that the doctrine of sovereign immunity barred Mitchell's claim of negligent misrepresentation against DCH and that Mitchell's claims for negligent misrepresentation, promissory estoppel, breach of contract, equitable estoppel and wrongful denial of medical benefits under OCGA § 33-4-6 fail as a matter of law.

Following a hearing on the motions, the trial court denied Mitchell's motion for partial summary judgment and granted DCH's, Beech Street's and BCBS's motions for summary judgment. Mitchell appeals, alleging the trial court erred in granting the DCH's, Beech Street's and BCBS's motions for summary judgment, erred in denying her motion for partial summary judgment, and erred in denying her oral argument on the motions for summary judgment. However, the trial court's order is grounded upon the following undisputed facts: (1) at DCH's request, UAB was excluded from Beech Street's PPO network, making UAB an out-of-network provider for purposes of Mitchell's health plan; (2) both the Beech Street and DCH websites included disclaimers regarding the possibility that Beech Street national PPO providers may not be in-network providers for individual health plans; (3) prior to both her 2002 and 2003 surgeries, Mitchell received actual notice that UAB was an out-of-network provider; and (4) despite receiving such notice, Mitchell elected to undergo surgery at UAB. The trial court correctly granted summary judgment to DCH, Beech Street and BCBS.

1. Mitchell contends the trial court erred in granting summary judgment to DCH, Beech Street and BCBS on her claim for negligent misrepresentation. We find no error. There are three essential elements of a negligent misrepresentation claim: (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.[3]

Here, Mitchell argues that DCH and Beech Street, by providing a direct link to the Beech Street website, made a representation that UAB is a provider in the national PPO network. Mitchell further contends that while Beech Street allegedly had disclaimers on its website, she did not see the disclaimers because she did not scroll to the bottom of the website and because she had a pop-up blocker on her computer.

(a) **DCH**: We need not reach the issue of whether DCH actually made negligent misrepresentations because sovereign immunity

---

[3] See *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997).

bars Mitchell's claim for negligent misrepresentation against DCH. The Georgia Tort Claims Act precludes any action for employees exercising due care in the execution of a statute, regulation, rule or ordinance.[4] The Regulations of the Community Health Board, § 478-6.10 (6) state:

> In creating the State Health Benefit Plan, neither the Georgia General Assembly nor the Board of Community Health has waived its sovereign immunity; thus no action, either in law or in equity, can be brought or maintained against the State of Georgia, the Board of Community Health, or any other department or political subdivision of the State of Georgia to recover any money under the Plan.

Moreover, even if sovereign immunity does not apply, the claim for negligent misrepresentation against DCH fails because the record is devoid of any facts showing that DCH represented that UAB was a participating provider in its PPO network. DCH never supplied any false information, negligent or otherwise, to Mitchell. In fact, the record shows and Mitchell admits that she received actual notice prior to her surgeries indicating that UAB and its providers were out-of-network. In addition, she admits she ignored DCH's instructions to visit its website to determine whether a provider was available to SHBP PPO members. Moreover, even Beech Street's website contains disclaimers directing clients to confirm the status of providers with their health plan benefit administrator.

(b) **Beech Street**: Mitchell's claims against Beech Street do not involve her 2002 surgery, when she was on the Indemnity plan. As to the 2003 surgery, Mitchell's receipt of actual notice prior to her 2003 surgery that UAB was out-of-network for the purposes of her health plan renders any reliance on the Beech Street website unreasonable as a matter of law.[5] Moreover, the record shows that Beech Street never made any representation (false or otherwise) to Mitchell with respect to her specific health plan. In fact, the Beech Street website contains numerous disclaimers directing users to verify their benefits with their health plan benefit administrators. Regardless of whether Mitchell saw the disclaimers, the mere presence of the disclaimers on the website is sufficient to render Mitchell's alleged

---

[4] See OCGA § 50-21-20 et seq.; see generally *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995).

[5] See *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga. App. 416, 418-420 (1) (597 SE2d 512) (2004); *Chiaka v. Rawles*, 240 Ga. App. 792, 793-794 (525 SE2d 162) (1999).

reliance unreasonable.[6] Other than visiting the Beech Street website, Mitchell did not have any other contact with Beech Street prior to her 2003 surgery.

(c) **BCBS**: Mitchell's negligent misrepresentation and estoppel claims against BCBS arise from telephone calls she made to BCBS. Without any specific evidence, she claims that BCBS employees failed to advise her that UAB was excluded from the national PPO network and, in fact, told her that UAB was an in-network provider. However, there are no facts in the record to support this assertion. The record shows that the phone call made after her 2002 surgery and before her 2003 surgery was made solely to discuss the 2002 surgery. At the time, she did not even know she was going to have the 2003 surgery, and she knew UAB was not a network provider with regard to her 2002 surgery. Mitchell claims that statements made in the fall 2003 phone call represented to her that her 2003 UAB claims would be considered in-network. However, such an understanding or assumption is not sufficient to support a negligent misrepresentation claim.[7] And, Mitchell received actual notice that UAB was an out-of-network provider prior to her 2003 surgery.

Furthermore, Mitchell consistently acknowledged that she was going to have the surgery at UAB regardless of her coverage because she thought UAB was the best place for the surgery.[8] Thus, she cannot prove any reasonable reliance on any alleged misrepresentations regarding the status of UAB as an in-network provider. In addition, Mitchell's reliance on the internet does not create a material issue of fact related to BCBS since BCBS had no involvement with or responsibility for either the Beech Street or DCH websites.

2. Mitchell argues that the trial court erred in granting summary judgment to DCH, Beech Street and BCBS on her claims for promissory estoppel and equitable estoppel. The elements of promissory estoppel include the following: (1) appellees made a promise; (2) appellees should have expected that appellant would rely upon the promise; (3) appellant relied on this promise to her detriment; and (4) injustice can only be avoided by enforcement of the promise.[9] Equitable estoppel may be used to prevent a party from denying at the time of litigation a representation that was made by that party and

---

[6] See *Nash*, supra at 419-420.

[7] See *Loy's Office Supplies v. Steelcase, Inc.*, 174 Ga. App. 701, 702 (331 SE2d 75) (1985); *Buice v. Gulf Oil Corp.*, 172 Ga. App. 93, 95 (1) (322 SE2d 103) (1984).

[8] 10/11/03 letter from Mitchell to DCH: "I feel I had no choice but to seek this treatment out-of-network." 6/30/02 letters from Mitchell to DCH: "I believe the quality of care I receive at UAB cannot be matched at an in network hospital."

[9] See *Kamat v. Allatoona Fed. Sav. Bank*, 231 Ga. App. 259, 263 (3) (498 SE2d 152) (1998); OCGA § 13-3-44 (a).

accepted and reasonably acted upon by another party with detrimental results to the party that acted thereon.[10]

Here, Mitchell contends that DCH promised SHBP members they would be protected from balance billing if they accessed Beech Street national providers outside of the Georgia service area. She further argues once again that DCH and Beech Street represented that UAB was a participating provider in the national PPO network, and that a BCBS employee represented that UAB was an in-network PPO provider. Mitchell claims she relied on these promises and representations.

However, the DCH website and the SHBP pre-certification letter belie such an assertion. All information provided to Mitchell put her on notice that she either needed to obtain medical care from an in-network provider or she would be subject to balance billing. Furthermore, the record shows that Beech Street never made any promises to Mitchell. Even if a promise were made, Mitchell's receipt of the pre-certification letter notifying her that UAB was an out-of-network provider shows it was unreasonable for her to rely on any such promise.[11] There is also no evidence that Beech Street had any involvement in the administration of claims and/or benefits under the SHBP. Mitchell's promissory estoppel claim against BCBS fails for the same reasons discussed above in Division 1(c).

As for Mitchell's equitable estoppel claim, we note that equitable estoppel is not recognized as an independent cause of action under Georgia law.[12] Since her other claims fail as a matter of law, the trial court correctly granted summary judgment on her claim of equitable estoppel.

3. Mitchell contends the trial court erred in granting summary judgment to DCH, Beech Street and BCBS on her claim for breach of contract. There are four essential elements to a valid contract: (1) there must be parties able to contract; (2) consideration; (3) assent of the parties to the terms of the contract; and (4) a subject matter upon which the contract can operate.[13] We find no error in the trial court's grant of summary judgment to DCH, Beech Street and BCBS on Mitchell's breach of contract cause of action.

(a) **DCH**: We need not reach the issue of whether a contract between Mitchell and DCH exists or whether sovereign immunity bars Mitchell's breach of contract claim against DCH. Summary

---

[10] See *Wilson v. Keheley & Co.*, 177 Ga. App. 769, 770 (2) (341 SE2d 245) (1986).

[11] *Gilmour v. American Nat. Red Cross*, 385 F3d 1318, 1321 (11th Cir. 2004) (a determination of reasonableness can be made as a matter of law if a prior disclaimer or disclosure prevents justifiable reliance on the representation).

[12] See *Kirkland v. Pioneer Machinery*, 243 Ga. App. 694, 696 (534 SE2d 435) (2000).

[13] OCGA § 13-3-1.

judgment was appropriate because the record shows that DCH did not breach any alleged contract. Mitchell knew before both surgeries that treatment by UAB would be covered at out-of-network rates and she would be subject to the possibility of balance billing. DCH did not improperly deny Mitchell health insurance benefits.

Moreover, contrary to Mitchell's assertion, Mitchell was not a third-party beneficiary to the contract between DCH and Beech Street because she was not an intended beneficiary of the contract.[14] In any event, DCH never breached any contract with Beech Street. And, there is no evidence in the record showing that the UCR amounts or DRG amounts set by DCH were unreasonable.

(b) **Beech Street**: Mitchell argues that Beech Street failed to provide an accurate listing of participating providers in the national PPO network for SHBP members, that Beech Street is contractually required to provide an accurate listing of the participating providers, and that she, as an intended beneficiary of the Beech Street contract, can maintain an action against Beech Street, the promisor on the contract.[15] We disagree.

First of all, there is no breach of the DCH/Beech Street contract, and Beech Street did not fail to provide an accurate listing of participating providers in the national PPO network for SHBP members. Pursuant to the contract, Beech Street is only responsible for providing SHBP members with access to a website listing the Beech Street national PPO provider directory. It fulfilled this duty. Beech Street was not required to modify its national website to reflect DCH's provider exclusions. It was DCH's responsibility to communicate provider exclusions to SHBP members. In addition, as stated previously, Mitchell is not a third-party beneficiary to any contract between DCH and Beech Street.[16]

(c) **BCBS**: Mitchell asserts that as an administrator of an employee health benefit plan, BCBS can be held liable for breach of contract even if the state retains the authority to make final benefit determinations.[17] According to Mitchell, there is a genuine issue of material fact regarding whether BCBS fulfilled its obligations to administer all medical claims for SHBP members. Mitchell contends that when developing the UCR rates, BCBS failed to consider the fees charged by physicians practicing in a given geographical area for the procedure performed. She also contends that BCBS contracted with

[14] See *Backus v. Chilivis*, 236 Ga. 500, 502 (224 SE2d 370) (1976) (third-party beneficiaries may only sue in their names where it clearly appears from the contract that it was intended for their benefit); see also OCGA § 9-2-20 (b).

[15] OCGA § 9-2-20 (b).

[16] See *Backus*, supra.

[17] See *Monroe v. Bd. of Regents &c. of Ga.*, 268 Ga. App. 659 (602 SE2d 219) (2004).

DCH to provide customer service to plan members concerning eligibility verification, benefit information, participating provider steerage and claim processing inquiries and that, as a third-party beneficiary of that contract, she can maintain an action against BCBS for its breach of the contract with DCH. Specifically, Mitchell contends that BCBS informed her that UAB was an in-network PPO provider and never advised her that UAB was excluded from the SHBP PPO network. Again, we find no error in the trial court's grant of summary judgment to BCBS.

The terms of the contract between DCH and BCBS address only administrative services to DCH. BCBS assumed contractual obligations to DCH and not SHBP members. Therefore, Mitchell was not a third-party beneficiary under the contract. In addition, the contract states that BCBS has no liability for payment of benefits under the SHBP.

4. Mitchell argues that the trial court erred in granting summary judgment to DCH on her claim for bad faith denial of insurance benefits. According to Mitchell, the denial was in bad faith because DCH knew the reimbursement for health benefits was lower when DRG rates are utilized. She further claims that DCH knew her benefits should have been processed as in-network for the 2003 hospitalization since UAB is listed as a participating provider without any disclaimers.

We first note that the SHBP is not subject to penalties under the Georgia Insurance Code.[18] Moreover, Mitchell's benefits were never denied; she was merely paid the out-of-network rate in accordance with the plan she selected.

As for Beech Street, its contractual responsibilities are limited to developing and maintaining a national PPO network. At no time did the company have any responsibility or involvement with the administration of claims or benefits under the SHBP or the use of DRG or UCR fees.

5. Mitchell argues that the trial court erred in denying her motion for partial summary judgment as to her claim for the 2003 surgery. She notes that in an e-mail, DCH's manager of review services admits Mitchell's 2003 hospitalization to UAB should have been paid as an in-network charge:

This member is complaining because she is using UAB because she thought that UAB was INN [in-network] as it is now back again on the website. However, BCBS is still

---

[18] 1982 Op. Atty. Gen. 142 (82-70).

showing the facility as OON [out-of-network] and is process-
ing claims accordingly. I looked at the website and, sure
enough, it's out there with no disclaimer or anything to tell
a member that SHBP excludes the facility.... It appears that
we are going to have to adjust all of her claims as INN since
it's out on the website.

However, the e-mails referenced by Mitchell represent an at-
tempt by DCH to determine the accuracy of its determination to
process Mitchell's health benefits for the 2003 surgery as out-of-
network. In addition, Mitchell was not even privy to the internet
e-mails until discovery in this case. Therefore, she could not have
relied on the e-mails to her detriment in choosing to undergo surgery
at an out-of-state/out-of-network hospital.

As for Beech Street and BCBS, there is no evidence that either
company made any admission or had any involvement with the
determination of Mitchell's health benefits for her 2003 surgery. The
e-mail correspondence not only does not constitute an admission on
the part of DCH, but any such admission would relate to DCH's
liability, not Beech Street's or BCBS's liability. The trial court did not
err in granting summary judgment to DCH, Beech Street or BCBS on
this ground.

6. In her final enumeration of error, Mitchell contends that the
trial court erred in denying her oral argument. While it is reversible
error for a trial court to deny oral argument,[19] we find no such error
in this case. All parties moved for summary judgment and requested
oral argument. And all parties were present at the court's July 6, 2005
hearing and allowed to present oral argument, although the court did
ask that counsel confine their remarks to specific areas about which
she had questions. Most importantly, at no point did Mitchell object
to the procedures followed at the hearing, nor did she request
additional time to present oral argument on any issue. Her failure to
object precludes consideration of this issue on appeal.[20]

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED AUGUST 17, 2006.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Claire C. Murray*, for
appellant.

*Thurbert E. Baker, Attorney General, King & Spalding, James W.
Boswell III, Misty M. Speake, Owen, Gleaton, Egan, Jones & Sweeney,*

[19] See *Carroll Anesthesia Assoc. v. Anesthecare, Inc.*, 230 Ga. App. 269, 270 (1) (495 SE2d
897) (1998).
[20] See *Carden v. Warren*, 269 Ga. App. 275, 278 (3) (603 SE2d 769) (2004).

*David C. Will, Michelle K. McDonald, Toni L. Castel, Michael R. Hurst*, for appellees.