[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14977
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-01406-WBH

PETER A. WILSON,

Plaintiff - Appellant,

versus

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 11, 2015)

Before MARCUS, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

This appeal arises out of a breach of contract claim brought by Peter A. Wilson against International Business Machines Corporation.  The district court granted summary judgment in favor of IBM, ruling that the incentive plan at issue is not an enforceable contract, and that, even if it is, Mr. Wilson failed to show that IBM breached.  After review of the record and the parties' briefs, we affirm.

## I

We assume the parties are familiar with the litigation history of this case. Thus, we summarize the proceedings and facts only insofar as necessary to provide context for our decision.

Mr. Wilson was a software salesman for IBM.  His compensation included a fixed salary as well as a sales commission.  The terms of the commission are governed by an Incentive Plan Letter ("IPL") which Mr. Wilson accepted in February of 2011.  The IPL sets Mr. Wilson's sales quota at $798,000 and provides for a six month sales period—January 1, 2011, through June 30, 2011.  The IPL includes a "Right to Modify or Cancel" clause, which in relevant part states:

> IBM reserves the right to adjust the Plan terms (including, but not limited to, changes to sales quotas or other performance objectives, . . . or changes to target incentives or similar earnings opportunities) or to modify or cancel the Plan, . . . at any time during the Plan period up until any related payments have been earned under the Plan terms.

D.E. 34-3 at 3-4.

2

The IPL also gives IBM the "sole discretion" to "adjust incentive payments associated with [significant] transactions." *Id.* at 5. One example of a "significant transaction" is as a transaction for which "the incentive payment[ is] disproportionate when compared with [the employee's] performance contribution towards the transaction." *Id.*

During the first half of 2011, IBM entered into a licensing agreement with Bank of America worth approximately $63 million. Mr. Wilson's contribution to the transaction was estimated at approximately $7.7 million. Based on that contribution, Mr. Wilson claims that he earned a commission of $816,947. IBM, however, classified the Bank of America deal as a "significant transaction," thereby triggering an "account level" review (or recalculation) of Mr. Wilson's sales quota, and his corresponding commission. Based on IBM's recalculation, Mr. Wilson received a commission of $471,299 for his work on the Bank of America deal.

Mr. Wilson brought a breach of contract action against IBM in Georgia state court, claiming that IBM owed him an additional $345,718. IBM removed the case to federal court and later moved for summary judgment. The district court granted IBM's motion, ruling that the IPL is not an enforceable contract, and that, even if it is, IBM did not breach the IPL. Mr. Wilson now appeals.

3

## II

"The district court's grant of summary judgment is subject to plenary review." *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1301 (11th Cir. 2012). "We will affirm if, after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263-64 (11th Cir. 2010).

## III

The interpretation of a contract is a question of law subject to *de novo* review. *See Southland Distributors Mktg. Co. v. S&P Co.*, 296 F.3d 1050, 1053 (11th Cir. 2002). Under Georgia law, which applies here, a contract that is clear and unambiguous is enforced according to its clear terms. *See Begner v. United States*, 428 F.3d 998, 1005 (11th Cir. 2005) (quoting *Eudy v. Universal Wrestling Corp.*, 611 S.E.2d 770, 773 (Ga. Ct. App. 2005)). "A contract is ambiguous if it contains a 'duplicity, indistinctness, an uncertainty of meaning or expression' that makes it susceptible to several reasonable interpretations." *Begner*, 428 F.3d at 1005 (quoting *Holcim (US), Inc. v. AMDG, Inc.*, 596 S.E.2d 197, 200 (Ga. Ct. App. 2004)).

## A

We assume, without deciding, that the IPL is an enforceable contract. Nonetheless, IBM is entitled to summary judgment because it did not breach the IPL.

The express language of the IPL gives IBM the exclusive right to adjust, modify, or cancel the Plan. *See* D.E. 34-3 at 3-4. This includes the right to "change[ ] sales quotas [and] other performance objectives[.] *Id.* The IPL also gives IBM—at its "sole discretion"—the unilateral authority to "adjust incentive payments associated with [significant] transactions." *Id.* at 5. Mr. Wilson does not dispute that he assented to the terms of the IPL. In fact, he argues here—as he did in the district court—that the IPL is an enforceable contract. Nor does Mr. Wilson deny that the Bank of America transaction was significant. Indeed, he admits it was a "blockbuster deal." D.E. 32 at 60 (Wilson Dep.). In any event, whether Mr. Wilson concedes that the Bank of American transaction was significant is of no moment, because the IPL leaves that call to IBM.

In short, the clear terms of the IPL provide that IBM holds the cards with respect to how sales commissions are calculated. The IPL may indeed include terms that are very favorable to IBM, but those are the terms Mr. Wilson admittedly accepted. Mr. Wilson cannot argue that the IPL is an enforceable

5

contract on the one hand, while refusing to accept its disadvantageous terms on the other.

We hold that the unambiguous language of the IPL gave IBM the unilateral and unconditional authority to modify Mr. Wilson's sales quota. And we conclude—like the district court—that IBM did not breach the IPL when it modified the Mr. Wilson's quota for the Bank of America deal based on its determination that the transaction was significant. *See, e.g.*, *Knight Indus., Inc. v. Turner Mktg., Inc.*, 276 S.E.2d 860, 862 (Ga. Ct. App. 1981) (where provisions of contract gave one of the parties "complete and absolute discretion" as to a matter, exercise of that discretion does not constitute a breach).

**B**

Mr. Wilson also argues that IBM breached the IPL by retroactively modifying his sales quota when it recalculated the quota after the applicable sales period had closed—i.e., after June 30, 2011.[1] Again, Mr. Wilson ignores the plain language of the IPL.

The "Right to Modify or Cancel" clause states that IBM may modify the IPL "at any time during the Plan period *up until any related payments have been earned*[.]" D.E. 34-3 at 4 (emphasis added). The "Full-Plan Earnings" clause

---

[1] Mr. Wilson admitted that IBM did not modify the original sales quota for his other first-half 2011 transactions ($798,000). D.E. 37 at ¶ 58. D.E. 34-2 at ¶ 58.

provides that "incentive payments are earned . . . only after the measurement of complete business results *following the end of the full-Plan period*[.]"    *Id.* (emphasis added).[2]    The terms of the IPL are clear: Commissions are not earned until business results are complete—i.e., until IBM assesses the impact of a significant transaction on an employee's sales quota.    And results are deemed complete only after the Plan term ends.    IBM's right to modify the IPL, therefore, did not end on June 30, 2011.

## C

Mr. Wilson next argues that because he received commission statements associated with the Bank of America transaction, and those statements were stamped "earned," IBM breached the IPL when it subsequently modified the amount of his commission.    Once again, Mr. Wilson's argument is foreclosed by the language of the IPL.

The "Plan-to-Date Advance Payments" clause provides that "[i]ncentive payments [an employee] may receive for Plan-to-Date achievements (before the full-Plan period is over and before its business results are complete) are a form of advance payment based on incomplete business results."    D.E. 34-3 at 4.    And as noted above, the "Full-Plan Earnings" clause states that incentive payments are not

---

[2] The "Plan-to-Date Advance Payment" clause similarly provides that "[m]easurement of achievement requires complete, final, and accurate business results which become available *only after the completion of the applicable full-Plan period*."  D.E. 34-3 at 4 (emphasis added).

earned until IBM concludes its measurement of complete business results. The fact that IBM provided interim commission statements—stamped "earned" or otherwise—did not preclude IBM from later modifying Mr. Wilson's quota and concomitant commission within the time specified in the IPL.

## IV

In granting summary judgment in favor of IBM, the district court also ruled that Mr. Wilson was not entitled to attorney's fees under O.C.G.A § 13-6-11. We agree. "A prerequisite to any award of attorney fees under O.C.G.A. § 13–6–11 is the award of damages or other relief on the underlying claim." *United Companies Lending Corp. v. Peacock*, 475 S.E.2d 601, 602 (1996). Because summary judgment in favor of IBM was appropriate on the breach of contract claim, Mr. Wilson is not entitled to attorney's fees under § 13-6-11.

## V

For the forgoing reasons, we affirm the district court's grant of summary judgment in favor of IBM.[3]

**AFFIRMED.**

---

[3] We have considered Mr. Wilson's remaining arguments on appeal and find they are without merit.