[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11824
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-03724-LMM


CHRISTOPHER MIDDLETON,

Plaintiff-Appellant,

versus

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 26, 2019)

Before MARTIN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Christopher Middleton appeals the district court's dismissal of his amended complaint against his former employer, International Business Machines Corporation ("IBM"), for failure to state a claim. See Fed. R. Civ. P. 12(b)(6). After careful review, we affirm the district court's judgment.

## I.

Middleton began selling software for IBM in July 2012. He earned a base salary, as well as commissions from his sales. IBM calculated Middleton's commissions as a percentage of his sales. To explain how commissions would be calculated, IBM sent each sales employee an Incentive Plan Letter ("IPL"). IBM asked each employee to "read" and "accept" the IPL in order to be paid sales commissions.

Middleton received and accepted at least two IPLs while employed at IBM. IBM sent Middleton an IPL near the start of 2015, which governed his commissions during the sales period from January to June 2015. After Middleton changed roles at IBM in April 2015, Middleton received and accepted a replacement IPL covering his sales through June 2015.

Middleton's new IPL specified the percentage of Middleton's sales payable as "incentive payments," its term for commissions. But the IPL also contained certain "[d]isclaimer statements." Specifically, the IPL reserved IBM's right to "modify or cancel" the terms in the IPL, including "incentive payment rates . . .

2

[and] similar earnings opportunities," any time before the end of the six-month sales period. The IPL warned it was not "a promise by IBM to make any distributions" of commissions. The IPL also gave IBM the right to "review and, in its sole discretion, adjust incentive achievement" for "[s]ignificant [t]ransactions." Under this provision, IBM could change incentive payments that were "disproportionate" to the "opportunity anticipated during account planning" or to an employee's "contribution towards the transaction." Simply put, the IPL allowed IBM to withhold commission pay altogether or singlehandedly adjust a commission payment if IBM deemed it "disproportionate."

Middleton understood his commission pay differently. Outside of the IPL, Middleton says, IBM management regularly told salespeople their sales commissions were "uncapped," or unlimited. Middleton claims IBM presented and published a PowerPoint presentation announcing "earnings opportunit[ies] [are] uncapped." Middleton believed this PowerPoint "explain[ed] the important terms of his compensation."

Believing his sales commissions were unlimited, Middleton sold about $11 million of IBM products to Delta Airlines sometime before July 2015. Based on the commissions formula in his IPL, Middleton expected to earn a $1,003,204 commission from the Delta sale. Instead, IBM executives told Middleton he would

3

receive only $167,200.64 as commission for the Delta sale.  IBM told Middleton this amount was "fair."

Claiming IBM wrongfully "capped" his Delta commission, Middleton sued IBM for the unpaid amount.  Middleton alleged claims under Georgia law for fraudulent misrepresentation, negligent misrepresentation, quantum meruit, unjust enrichment, and punitive damages.  In support of his claims, Middleton relied on depositions of four IBM employees in another case, Choplin v. International Business Machines Corporation, No. 1:16-cv-01412 (M.D.N.C. filed Dec. 16, 2016).  The depositions, Middleton argued, contained admissions that IBM employees could reasonably rely on statements about "uncapped commissions" in the IBM PowerPoint.

Citing the disclaimers in Middleton's IPL, IBM moved to dismiss Middleton's complaint for failure to state a claim.  The district court granted IBM's motion to dismiss.

The district court noted that, to prevail for fraudulent or negligent misrepresentation, Middleton must show "justifiable"—i.e., reasonable— "reliance" on IBM's false representations.  The district court found Middleton's reliance on IBM's various statements about "uncapped commissions" was unreasonable as a matter of law, because the IPL included disclaimers giving IBM

4

the power to adjust Middleton's commissions.  The district court dismissed Middleton's fraudulent and negligent misrepresentation claims.

The district court then dismissed Middleton's quantum meruit claim.  It observed that, to recover in quantum meruit, Middleton must show he "reasonably expected compensation" from IBM that he did not receive.  Because IBM could "adjust" individual commissions and "modify or cancel" the commissions plan at any time under the IPL, the district court determined Middleton could not reasonably expect a "specific commission" from IBM.

The district court also dismissed Middleton's unjust enrichment claim.  To recover for unjust enrichment, the court observed, Middleton must show he was "not already reasonably compensated."  The court found Middleton was reasonably compensated by his base salary, so it dismissed Middleton's unjust enrichment claim.

Finally, the district court dismissed Middleton's claim for punitive damages as derivative of Middleton's unsuccessful tort claims.  Middleton filed a timely appeal.

## II.

"We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff."  Cinotto v. Delta

5

Air Lines, Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).  Review of a motion to dismiss is ordinarily "limited to the four corners of the complaint."  St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).  But we may also consider Middleton's IPL when reviewing dismissal, because Middleton incorporated the IPL into his complaint by reference.  See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (allowing consideration of a document "central to the plaintiff's claim" and undisputedly authentic).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A complaint is facially plausible if the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  We cannot draw that inference here.

## III.

Middleton first argues the district court erred by dismissing his claims of fraudulent and negligent misrepresentation.  He maintains he reasonably relied on statements in the IBM PowerPoint that his commissions were "uncapped."[1]  We are not persuaded.

---

[1] Middleton declines to argue here, as he did before the district court, that IBM managers also told him commissions were uncapped.

6

Under Georgia law, which the parties agree applies in this diversity action, Middleton cannot state a claim for fraudulent or negligent misrepresentation. "[For] both fraud and negligent misrepresentation, justifiable reliance is . . . an essential element." See Artzner v. A & A Exterminators, Inc., 531 S.E.2d 200, 205 (Ga. Ct. App. 2000) (citations omitted). "Whether it was reasonable . . . to rely upon a certain misrepresentation is generally a question for a jury, although in some cases, the answer may appear so clearly that the question can be decided by a court as a matter of law." Raysoni v. Payless Auto Deals, LLC, 766 S.E.2d 24, 26 (Ga. 2014) (citations omitted).

Middleton's IPL made his reliance on the PowerPoint unreasonable as a matter of law. "[U]nder Georgia law, 'the mere presence of a disclaimer,' regardless of whether or not the plaintiff saw it, can 'render . . . reliance unreasonable.'" Atwater v. Nat'l Football League Players Ass'n, 626 F.3d 1170, 1183 (11th Cir. 2010) (alteration adopted) (quoting Mitchell v. Ga. Dep't of Cmty. Health, 635 S.E.2d 798, 804 (Ga. Ct. App. 2006)) (addressing a negligent misrepresentation claim). For this reason, IBM's promises of uncapped commissions "must be viewed in context of the written statements" in the IPL. See Gilmour v. Am. Nat. Red Cross, 385 F.3d 1318, 1322 (11th Cir. 2004) (per curiam) (rejecting aid volunteer's negligent misrepresentation claim for medical

expenses, because the Red Cross's volunteer manual indicated that coverage of medical expenses was discretionary).

The IPL's written disclaimers squarely contradicted Middleton's assertions about his commissions. Middleton believed he was entitled to commission pay. But the IPL warned that IBM did not "promise . . . to make any distributions" under the commission plan and could "modify or cancel" the IPL at any time before commissions were paid. See Wilson v. Int'l Bus. Machs. Corp., 610 F. App'x 886, 889 (11th Cir. 2015) (per curiam) (unpublished) (holding "that the unambiguous language of the IPL gave IBM the unilateral and unconditional authority to modify Mr. Wilson's sales quota"). Counting on the IPL commissions formula, Middleton believed he would receive a certain commission payment for his multimillion-dollar Delta sale. But the IPL also gave IBM the right to "review and, in its sole discretion, adjust incentive achievement" for "[s]ignificant [t]ransactions."[2] "In short, the clear terms of the IPL provide that IBM holds the cards with respect to how sales commissions are calculated." Wilson, 610 F. App'x at 889. Middleton could not reasonably believe otherwise.

---

[2] Middleton argues IBM did not rely on the IPL's "significant transactions" clause when it capped his Delta commission. At the same time, Middleton says he closed such "a large deal" with Delta that IBM reduced his commission "to meet its own budget." This is precisely how the IPL allowed IBM to handle "significant transactions." Under this clause, IBM retained the right to adjust commission pay that it deemed "disproportionate" to the "opportunity anticipated during account planning."

Even so, Middleton relies heavily on depositions with four IBM employees taken in Choplin to prove his belief in uncapped commissions was reasonable. Under oath, four IBM employees answered "yes" to the question of whether it was reasonable for salespeople to rely on the PowerPoint's statement about "uncapped" commissions. This testimony, however, provides nothing more than subjective legal conclusions that an employee's reliance on the IBM PowerPoint could be "reasonable." Because "we are not bound to accept as true a legal conclusion couched as a factual allegation," Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949–50 (quotation marks omitted), the Choplin depositions hold no sway here.

Middleton's reliance on the IBM PowerPoint was unreasonable as a matter of law, so he has failed to state a claim for fraudulent or negligent misrepresentation. As a result, we need not reach Middleton's other arguments defending his fraud claim.

## IV.

Middleton's claim for quantum meruit is similarly unavailing. Under Georgia law, to state a claim for quantum meruit, Middleton must allege 1) he performed valuable services 2) which IBM requested or knowingly accepted, 3) Middleton expected compensation when performing the services, and 4) IBM accepting Middleton's services without compensation would be unjust. See Amend v. 485 Properties, 627 S.E.2d 565, 567 (Ga. 2006).

We affirm the district court's dismissal of Middleton's quantum meruit claim. Quantum meruit relies upon an implied promise of compensation between the parties. Cochran v. Ogletree, 536 S.E.2d 194, 197 (Ga. Ct. App. 2000). As the IPL's many disclaimers make clear, IBM did not promise any commissions, or specific commission payments, to Middleton.

Beyond that, Middleton "cannot show that [he] was not already reasonably compensated for [his] services" to IBM. See Rodriguez v. Vision Corr. Grp., Inc., 580 S.E.2d 266, 268 (Ga. Ct. App. 2003). Reasonable compensation "is defined in terms of value to the recipient" of the services. Jackson v. Ford, 555 S.E.2d 143, 148 (Ga. Ct. App. 2001). First, Middleton earned a base salary throughout his time as an IBM salesman, which IBM paid to compensate him for his sales work. See Walker v. Gen. Motors Corp., 263 S.E.2d 266, 267 (Ga. Ct. App. 1979) (holding employee had no basis for quantum meruit claim where he was paid salary). Middleton has not argued that "the salary which he received for his work was so unreasonably low that he is entitled to a recovery based on quantum meruit." Id. And in this case, Middleton received a six-figure commission for the Delta sale, which IBM said was "fair." See Nelson & Hill, P.A. v. Wood, 537 S.E.2d 670, 675 (Ga. Ct. App. 2000) (rejecting quantum meruit claim brought by attorneys who had already "received a reasonable fee"). For these reasons, Middleton cannot state a claim for quantum meruit.

10

## V.

The district court correctly dismissed Middleton's claim for unjust enrichment for the same reasons.  "[U]njust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated."  Cochran, 536 S.E.2d at 538–39 (emphasis added).  As discussed, IBM did compensate Middleton for his work on the Delta sale, through his base salary and through commission pay.  As a matter of law, Middleton cannot claim otherwise.

## VI.

In light of our holding that the district court properly dismissed all of Middleton's tort claims, Middleton's "claim for punitive damages was properly dismissed as derivative of those claims."  See Lilliston v. Regions Bank, 653 S.E.2d 306, 311 (Ga. Ct. App. 2007).

**AFFIRMED.**

11